UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MATTHEW T. WOOD,

          Plaintiff,

       v.

GONZAGA UNIVERSITY,

          Defendant.

No. CV-05-0055-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Ct. Rec. 22) and Defendant's Motion to Strike Portions of Affidavit of Matthew Wood in Opposition to Defendant's Motion for Summary Judgment (Ct. Rec 35). Defendant is represented by James King and Chris Kerley. Plaintiff is proceeding *pro se*.

**BACKGROUND**

Plaintiff, Matthew Wood, alleges he was wrongfully terminated by Defendant Gonzaga University in retaliation for objecting to certain behavior by other employees in his department. Plaintiff was employed in Gonzaga University's Desktop Computer Support Services Department (IT Department). In 1997, Plaintiff's position was that of Desktop Support Technician for Desktop Support Services. After working in that position for approximately two years, Plaintiff became the Desktop Support Coordinator. Approximately one year later, Plaintiff held the position of a Desktop Support Manager, then Systems

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Administrator, and finally, Senior Administrator/Desktop Support
Manager.  Plaintiff held this position for approximately one year and
held this position at the time of his termination.  All of Plaintiff's
position changes were promotions and involved increasing levels of
responsibility.  Throughout Plaintiff's time in the IT Department, his
immediate supervisor was Chris Gill.

Clint Anderson was a Desktop Support Technician hired by
Defendant in 2001.  Plaintiff was Mr. Anderson's immediate supervisor
until sometime in the fall of 2003, when the Technicians became self-
managed.[1]  Approximately 6-9 months after Mr. Anderson began working
for Gonzaga, Plaintiff became aware of what he felt was inappropriate
workplace behavior.  For example, Plaintiff Mr. Anderson wrote a
comment on a blackboard in Plaintiff's office about female students
being "eye candy."  Plaintiff immediately erased the statement before
any female students saw the message.  Plaintiff also mentions an
incident where he witnessed what he considered inappropriate physical
contact between Mr. Anderson and a female work-study student in the
computer room.[2]  Plaintiff complained about this behavior to Ms.
Craigen, who then reported it to Victoria Loveland in Human Resources.
Plaintiff also voiced his concerns about Mr. Anderson to Mr. Gill.  In
fact, Plaintiff contends he had regular meetings with his supervisor,
Mr. Gill, concerning Mr. Anderson's behavior and activities.

[1] Plaintiff was also the direct supervisor of Brady Nielsen,
another Desktop Support Technician.

[2] Plaintiff alleges Mr. Anderson got too close to the female
student when he was working on her computer.  The female student
had no reaction to what Plaintiff deems inappropriate physical
contact.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Plaintiff's Complaint also references what he considered to be Mr. Gill's hostile and aggressive attitude toward co-employee, Vickie Craigen. This perception was based on a conversation in which Mr. Gill told Ms. Craigen her attitude toward the other technicians was unacceptable and that she needed to be more professional in her conduct and more accepting of the other technicians in the IT Department. This conversation first occurred in the latter part of 2003. Plaintiff also observed what he considered a display of hostility by Mr. Gill toward Ms. Craigen in January 2004 during a verbal exchange in Ms. Craigen's office. The exchange had something to do with a project they were working on and Mr. Gill told Ms. Craigen she needed to begin to look to Greg Francis for answers to certain questions rather than the Plaintiff. According to Plaintiff, this was the beginning of Mr. Gill's attempt to isolate Plaintiff and Ms. Craigen because Ms. Craigen confided in Plaintiff too much.

In November of 2003, Ms. Craigen told Plaintiff she was not happy working with Mr. Anderson and that she had complained to Mr. Gill about Mr. Anderson. Plaintiff got the impression that Ms. Craigen was uncomfortable around Mr. Anderson and that she was not happy with the way her concerns had been handled by Mr. Gill. Plaintiff complained to two people at Gonzaga about the incidents between Ms. Craigen and Mr. Gill: Victoria Loveland (Gonzaga's Director of Human Resources) and Mr. Gill, Plaintiff's supervisor.

In addition to speaking to Plaintiff, Ms. Craigen also complained to several other individuals about her working environment. In an email dated November 6, 2003, Ms. Craigen wrote to Stephen Doolittle:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

"I have been having difficulties with two employees in my department, Brady Neilsen and Clint Anderson, for a prolonged period of time.  My supervisors [Chris Gills] are aware of the circumstances and continued problems."  Ms. Craigen asked Mr. Doolittle about her "options" and whether Gonzaga was going to assist her.  On April 23, 2004, Ms. Craigen emailed Gonzaga's Director of Human Resources, Victoria Loveland, complaining that she had been enduring "emotionally unacceptable harassment" and that she was contacting an attorney and would be requesting that Gonzaga move her to a different department where she would not have to report to Chris Gill.

In December 2003, Mr. Gill and Plaintiff began discussing a change in Plaintiff's position in the IT Department to Asset Manager. In this position, Plaintiff's hours of work, salary, benefits, and office space would have remained the same.  Further, Plaintiff would have continued to report to Mr. Gill.  Although no change had occurred by March 2004, Plaintiff was under the impression he would be changing positions.  Plaintiff did not consider this proposed change to be any type of adverse employment action.

On March 25, 2004, Plaintiff met Mr. Gill for lunch.  Plaintiff contends he told Mr. Gill his treatment of Ms. Craigen was inappropriate and that Plaintiff was under the impression Ms. Craigen was going to see an attorney.  Mr. Gill contends they talked about Plaintiff's new position and that Plaintiff was resisting the change. Mr. Gill alleges Plaintiff became angry with Mr. Gill during this conversation, but Plaintiff denies that allegation.

In March 2004, Plaintiff possessed administrative privileges on

Gonzaga's computer domain that allowed Plaintiff to modify the access privileges of other individuals. There is a great deal of trust associated with having such elevated administrative domain privileges. The only other two individuals with this same level of privilege were Greg Francis and Patrick Nowacki. Plaintiff admits that on March 26, 2004, he made some changes to the access privileges of other employees: Rob Tomlinson, an outside contractor; Paul Adminster, the Web Manager; and Chris Gill. Plaintiff did not speak to any of these individuals before making the changes to their access privileges.

The parties dispute how Mr. Gill came to realize these access privileges had been changed. Nonetheless, when Mr. Gill was notified about the changes, he notified his supervisor, Gonzaga's Chief Information Officer and Associate Academic Vice-President, Wayne Powel. An investigation pursued, the details of which are not part of the record. During this investigation, Mr. Gill asked Plaintiff why he had made the changes. According to Mr. Gill, Plaintiff's answer was inadequate. Plaintiff seems to contend he meant to remove some of the individuals from a specific athletics terminal server, not the main GUWEB2 server, and if that was what happened, it was a mistake. Moreover, Plaintiff maintains that making access changes is something he had done before without being reprimanded or disciplined.

By letter dated May 27, 2004, Plaintiff was terminated for "account irregularities which he had not been able to address in a satisfactory manner." Thereafter, Plaintiff filed this action. Plaintiff's Complaint asserts five causes of action: (1) retaliation; (2) wrongful discharge in violation of public policy; (3) negligent

retention/supervision; (4) emotional distress; and (5) outrage.
Defendant moves for summary judgment dismissal.

### SUMMARY JUDGMENT STANDARD

The moving party is entitled to summary judgment when there are
no genuine issues of material fact in dispute and the moving party is
entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex
Corp. v. Catrett*, 477 U.S. 316, 323, 106 S.Ct. 2548, 2552 (1986). "A
material issue of fact is one that affects the outcome of the
litigation and requires a trial to resolve the parties' differing
versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306
(9th Cir. 1982). Inferences drawn from facts are to be viewed in the
light most favorable to the non-moving party, but that party must do
more than show that there is some "metaphysical doubt" as to the
material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.
572, 586-87, 106 S.Ct. 1348, 1356 (1986). There is no issue for trial
"unless there is sufficient evidence favoring the non-moving party for
a jury to return a verdict for that party." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). A mere
"scintilla of evidence" in support of the non-moving party's position
is insufficient to defeat a motion for summary judgment. *Id.* at 252,
106 S.Ct. at 2512. The non-moving party cannot rely on conclusory
allegations alone to create an issue of material fact. *Hansen v.
United States*, 7 F.3d 137, 138 (9th Cir. 1993). Rather, the non-
moving party must present admissible evidence showing there is a
genuine issue for trial. Fed.R.Civ.P. 56(e); *Brinson v. Linda Rose
Joint Venture*, 53 f.3d 1044, 1049 (9th Cir. 1995). An issue of fact

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  "If the evidence is merely colorable...or is not significantly probative,...summary judgment may be granted."  *Id.* at 249-50, 106 S.Ct. at 2511 (citations omitted).

**DISCUSSION**

**A.  *Retaliation***

Plaintiff asserts a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e.[3]  Plaintiff alleges he was wrongfully terminated in retaliation for complaining to Defendant about fellow employees' treatment of woman employees.  *Complaint*, ¶¶ 18-22.  Section 704(a) makes it unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a) (1998).  To prove a prima facie case for retaliatory discharge, a plaintiff must show (1) he engaged in a statutorily protected activity, (2) an adverse employment action was taken against him, and (3) there was a causal link between his activity and the adverse employment action.  *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066-67 (9th Cir. 2003).  A prima facie case can be based on direct or circumstantial evidence.  *Little*

---

[3] Plaintiff's Complaint does not specifically assert a retaliation claim under Washington law against discrimination, RCW 49.60.210.  However, because Washington courts look to federal law when analyzing retaliation claims, the analysis would be the same even if Plaintiff intended to assert a claim under both federal and state law.  *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (citations omitted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

*v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002).  If the plaintiff establishes a prima facie retaliation case, the burden shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), applies.  *Stegall*, 350 F.3d at 1066. Under *McDonnell Douglas*, once the plaintiff sets forth *a prima facie* case of retaliation, the burden shifts to the defendant "to articulate a legitimate nondiscriminatory reason for termination." *Id.*  If the defendant articulates such a reason, the plaintiff bears the ultimate burden of persuasion by demonstrating the defendant's proffered reasons are merely pretext for a discriminatory motive. *Id.*  Only then does the case proceed beyond summary judgment. *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989).  At the summary judgment stage, the order of proof and shifting of burdens is viewed in light of the traditional summary judgment test. *Id.*

Protected activities under Title VII include more than merely filing a formal charge of harassment. *See e.g., Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (making an informal complaint to a supervisor is a protected activity); *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994) (holding that employee's complaint about the treatment of others is protected activity under Title VII even if the treatment he complained about is not legally cognizable); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) (filing internal complaint to company management was protected activity under Title VII).  Further, it is not necessary that the employment practice complained of actually be unlawful.  Opposition will be protected "when it is based on a reasonable belief that the employer has engaged

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

in an unlawful employment practice [under Title VII]." *Little*, 301
F.3d at 969 (citing *Moyo*, 40 F.3d at 984).  Thus, Plaintiff can state
a retaliation claim if he can show his belief that an unlawful
employment practice occurred was objectively "reasonable." *Id.* at
985.  The reasonableness of Plaintiff's belief "must be assessed
according to an objective standard--one that makes due allowance,
moreover, for the limited knowledge possessed by most Title VII
plaintiffs about the factual and legal bases of their claims." *Id.* A
reasonable mistake may be one of fact or law. *Id.*

Here, although Plaintiff does not provide any legal analysis with
respect to the theory behind his retaliation claim, he appears to
argue his complaints about the inappropriate behavior of the treatment
received by his co-employee, Ms. Craigen, constituted protected
activity.  However, to survive summary judgment, Plaintiff must
demonstrate he had a reasonable, objective, good faith belief that the
conduct he complained of was unlawful or discriminatory under Title
VII.  "Title VII forbids actions taken on the basis of sex that
'discriminate against any individual with respect to his compensation,
terms, conditions, or privileges of employment.'" *Clark County Sch.
Dist. v. Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508 (2001) (citing 42
U.S.C. § 2000e-2(a)(1)).  In other words, Plaintiff has to show he
reasonably believed the conduct he complained of constituted sexual
harassment. *Id.* at 270-71, 121 S.Ct. 1508.  "[S]exual harassment is
actionable under Title VII only if it is so severe or pervasive as to
alter the conditions of the victim's employment and create an abusive
working environment." *Id.* at 270, 121 S.Ct. 1508 (citations and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

internal quotations omitted).  Therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 271, 121 S.Ct. 1508 (citation omitted).

Here, Plaintiff contends Chris Gill displayed a hostile and aggressive attitude toward Vicki Craigen.  This is supported by the two situations involving verbal confrontations between Mr. Gill and Ms. Craigen, as well as Ms. Craigen's emails attached to her declaration.  However, the conduct Mr. Gill directed toward Ms. Craigen could not reasonably be considered sexual harassment.

Plaintiff also suggests the behavior of Clint Anderson and Brady Nielsen created a hostile work environment for Ms. Craigen.  Although the record clearly illustrates that Ms. Craigen did not get along with these co-employees, there is no evidence that the behavior of Ms. Craigen's co-employees was sufficiently "severe or pervasive" to support a sexual harassment/hostile work environment claim.  Plaintiff only provides two examples of sexually inappropriate speech or conduct.  First, Plaintiff points to Mr. Anderson's comment written on the black board about female students being "eye candy."  This, however, did not occur in the presence of Ms. Craigen because Plaintiff erased it immediately after discovering the message. Second, Plaintiff points to an incident where he felt Mr. Anderson came into inappropriate physical contact with a female work-study in the computer room.  Ms. Craigen did not witness this event.  These two isolated incidents do not constitute sexual harassment actionable under Title VII.  *See Clark County Sch. Dist.*, 532 U.S. 268, 121 S.Ct.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1508.

The Court concludes no reasonable person could have believed the events recounted herein violated Title VII's standard. Therefore, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim.

**B.  *Wrongful Discharge in Violation of Public Policy***

Washington law recognizes a cause of action in tort for wrongful discharge of an employee where the discharge contravenes a "clear mandate of public policy."  *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 232, 685 P.2d 1081 (1984).  The claim of wrongful discharge in violation of public policy is an intentional tort; the plaintiff must establish wrongful intent to discharge in violation of public policy.  *Korslund v. Dyncorp Tri-Cities, Servs., Inc.*, 156 Wash.2d 168, 178, 125 P.2d 119 (2005).  To satisfy the elements of the cause of action, the plaintiff must prove (1) the existence of a clear public policy (the *clarity* element); (2) that discouraging the conduct in which the employee engaged would jeopardize the public policy (the *jeopardy* element); (3) that the public policy-linked conduct caused dismissal (the *causation* element); and (4) the defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).  *Gardner v. Loomis Armored*, 128 Wash.2d 931, 941, 913 P.2d 377 (1996) (italics in original).

Although Plaintiff submitted no legal analysis, he seems to argue his termination was in response to his resistance to discriminatory practices and as such violates public policy and provides a basis for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

a separate tort of wrongful discharge.  However, citing *Jenkins v. Palmer*, 116 Wash.App. 671, 66 P.3d 1119 (2003), Defendant argues Plaintiff's claim for wrongful discharge fails because Plaintiff has not made the required showing that Defendant's conduct violated a specific statutory prohibition.

In *Jenkins*, the court declined to hear the plaintiff's claim for retaliation in violation of public policy because she failed to show that the Washington Law Against Discrimination (WLAD) applied to her circumstances.  *Jenkins*, 116 Wash.App. at 676-77, 66 P.3d at 1121-22. Thus, the court concluded the plaintiff had failed to plead and prove that a "stated public policy" had been contravened by the employer. Similarly, here, the Defendant argues that because Plaintiff has not asserted any claims under Washington's Law Against Discrimination (WLAD), Plaintiff cannot assert a common law cause of action for wrongful discharge.  Plaintiff does not respond.

Because Plaintiff has not pointed the Court to any specific statutory violation as the basis for his common law cause of action for wrongful discharge, the Court concludes Plaintiff has not satisfied the clarity element of this cause of action.  Therefore, Defendant's motion for summary judgment is granted with respect to Plaintiff's claim for wrongful discharge.

### C.    *Negligent Supervision*

The torts of negligent hiring, supervision and retention have generally been described as follows:

> [A]n employer may be liable to a third person for the
> employer's negligence in hiring or retaining a servant who

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

> is incompetent or unfit. Such negligence usually consists of hiring or retaining the employee with knowledge of his unfitness, or of failing to use reasonable care to discover it before hiring or retaining him. The theory of these decisions is that such negligence on the part of the employer is a wrong to such third person, entirely independent of the liability of the employer under the doctrine of respondeat superior. It is, of course, necessary to establish such negligence as the proximate cause of the damage to the third person, and this requires that the third person must have been injured by some negligent or other wrongful act of the employee so hired.

*Scott v. Blanchett High Sch.*, 50 Wash.App. 37, 43, 747 P.2d 1124

(1987). Liability under these causes of actions is limited to

situations where the "employer knew, or in the exercise of reasonable

care should have known, that the employee presented a risk of danger

to others." *Niece v. Elmview Group Home*, 131 Wash.2d 39, 48-49, 929

P.2d 420, 426 (1997). Further, negligent supervision creates a

limited duty to control an employee for the protection of a third

person when the employee is acting outside the scope of employment.

*Id*.

In the instant action, the theory behind Plaintiff's claim for

negligent hiring, retention and/or supervision is unclear.

Plaintiff's Complaint alleges only that Defendant was negligent in

retaining and supervising Mr. Powel and Mr. Gill. *Complaint*, ¶ 26.

However, Plaintiff submitted no evidence showing Defendant knew or

should have known that either Mr. Powel or Mr. Gill presented a risk

of harm to Plaintiff. Further, Plaintiff has not submitted any

evidence in support of his claim that he was terminated because of the

negligence of Mr. Powel or Mr. Gill. Moreover, Plaintiff has not

shown that Mr. Gill and/or Mr. Powell were acting outside the scope of

their employment when they allegedly harmed Plaintiff.  Therefore, the Court grants summary judgment for Defendant on Plaintiff's negligent supervision claim.

### D. *Negligent Infliction of Emotional Distress*

An employee may recover damages for emotional distress in an employment context, but only if the factual basis for the claim is distinct from the factual basis for the discrimination claim.  *Haubrey v. Snow*, 106 Wash.App. 666, 678, 31 P.3d 1186, 1193 (Div. 1, 2001) (citations omitted).  This is because emotional distress is compensable in a discrimination claim.  *Johnson v. Dep's Soc. Health Servs.*, 80 Wash.App. 212, 230, 907 P.2d 1223, 1233 (Div. 2, 1996). Here, Plaintiff has no separate compensable claim because the factual basis for his emotional distress claim is the same as his retaliation claim.  Thus, Plaintiff's claim for negligent infliction of emotional distress could be dismissed on this basis.

However, even if Plaintiff somehow based his claim on separate facts, the claim is subject to certain limitations.  A claim for negligent infliction of emotional distress requires Plaintiff to establish his emotional distress is manifested by objective symptoms. *Haubrey*, 106 Wash.App. at 678, 31 P.3d at 1193 (citing *Hunsley v. Giard*, 87 Wash.2d at 436, 553 P.2d 1096 (1976)).  To satisfy the objective symptomatology requirement, Plaintiff's emotional distress must be susceptible to medical diagnoses and proved through medical evidence.  *Haubrey*, 106 Wash.App. at 678-79, 31 P.3d at 1193 (citing *Hagel v. McMann*, 136 Wash.2d at 135, 960 P.2d 424 (1998)).  Here, Plaintiff submitted no medical evidence in the record to support his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

cause of action.  Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for negligent infliction of emotional distress.

### E.    Intentional Infliction of Emotional Distress (Outrage)

To prove a claim for intentional infliction of emotional distress ("outrage") in Washington, a plaintiff must establish (1) the defendant intentionally or recklessly inflicted emotional distress, (2) the conduct of the defendant was outrageous and extreme, and (3) the conduct resulted in severe emotional distress to the plaintiff. *Reid v. Pierce County*, 136 Wash.2d 195, 202, 961 P.2d 333, 337 (1998). Conduct is outrageous and extreme when it goes "beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community."  *Grimsby v. Samson*, 85 Wash.2d 52, 59, 530 P.2d 291, 295 (1975).

The Court concludes that Plaintiff has failed to show Defendant engaged in extreme and outrageous conduct.  Therefore, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's claim for outrage.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (**Ct. Rec. 22**) is **GRANTED.**

2.  Defendant's Motion to Strike Portions of Affidavit of Matthew Wood in Opposition to Defendant's Motion for Summary Judgment (**Ct. Rec 35**) is **MOOT.**

**IT IS SO ORDERED.**  The District Court Executive is hereby

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

directed to enter this Order, furnish copies to counsel and the **Plaintiff, ENTER JUDGEMENT for Defendant**; and **CLOSE THE FILE.**

**DATED** this <u>16th</u> day of May, 2006.


                        s/ Fred Van Sickle
                        Fred Van Sickle
                   United States District Judge